# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ANTONIO CROCKETT,

      Petitioner,

      v.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

      Respondent.

**CASE NO. 2:16-CV-925
JUDGE GEORGE C. SMITH
Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Twelfth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Gene Ivers, the Chief Probation Officer for the Washington Court House Municipal Court, performed a residence search of one of his probationers, Terri Ruth. Ivers was accompanied by a Fayette County deputy during the search. Ruth, who rented the apartment in which she and her daughter lived, was subject to residence searches as a term of her probation. When Ivers arrived to search Ruth's residence, Ruth, Ruth's daughter, Crockett, and another man were located in the apartment.

> Ivers discovered marijuana on Ruth's dresser in her bedroom, as well as a white powdery substance, plastic wrap and baggies, a locked safe, a key, digital scales, lighters, a burnt spoon, and small baggies of a white product. Inside the safe, Ivers found a gun, cash, and more drugs. Upon finding these items, Ivers and the deputy contacted the Sheriff's Office for aid in completing the search.

Lieutenant Ryan McFarland of the Fayette County Sheriff's Office responded to Ruth's residence. There, he seized the safe, gun, drugs, and money, and sent the items to the Ohio Bureau of Criminal Investigation for testing. The items in the baggies tested positive for cocaine and heroin, and the other drugs were identified as oxycodone, dihydrocodeine, and alprazolam.

Later, during a recorded phone call originating from the Fayette County Jail, Crocket and an unnamed woman were heard conversing about the possible charges against him. The woman indicated that the police were taking the gun and dusting it for fingerprints in order to determine who the gun belonged to. At that point, Crockett is heard stating, "I wiped that down. I got nothing to do with that."

Crockett was charged with multiple counts of trafficking in cocaine, possession of cocaine, trafficking in heroin, possession of heroin, aggravated trafficking in drugs, possession of controlled substances, and having weapons under disability. The matter proceeded to a jury trial after Crockett pled not guilty to all of the charges.

During trial, Crockett stipulated to his prior conviction of a drug-related offense, and the trial court admitted a redacted copy of Crockett's judgment entry of conviction to show that he was under a disability and not permitted to possess a gun.

The jury also heard a redacted version of the phone call between Crockett and the unnamed woman in which Crockett is heard discussing his claim that he wiped down the gun. Crockett did not testify, nor did he present any witnesses in his defense.

The jury found Crockett guilty of trafficking in, and possession of, the cocaine and heroin found in the safe, as well as having weapons under disability. However, the jury found Crockett not guilty of the other charges specific to the drugs located outside of the safe that Ivers found in different locations throughout Ruth's bedroom.

The trial court merged the possession charges into the trafficking charges, and sentenced Crockett to an aggregate sentence of nine years on the two trafficking charges and having weapons under disability. Crockett now appeals his convictions and sentence[.]

*State v. Crockett*, 2015 WL 2169268, at *1-2 (Ohio App. 12th Dist. May 11, 2015). Petitioner asserted on direct appeal that his convictions were against the manifest weight of the evidence, that the evidence was constitutionally insufficient to sustain his convictions, that he was denied the effective assistance of counsel. *See id*. On May 1, 2015, the appellate court affirmed the judgment of the trial court. *Id*. On August 26, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Crockett*, 143 Ohio St.3d 1447 (Ohio 2015). On July 22, 2015, Petitioner filed an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 6-1, PageID# 193.) On October 16, 2015, the appellate court denied the Rule 26(B) application. (PageID# 203.) Petitioner did not file an appeal.

On September 26, 2016, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that his convictions are against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his convictions (claim one); that he was denied the effective assistance of counsel (for different reasons) (claims two and three); and that the trial court erred when it denied his motion for judgment of acquittal (claim four). It is the position of the Respondent that Petitioner's claims are procedurally defaulted or otherwise fail to provide a basis for relief.

**Procedural Default: Claim Three**

The Court turns first to that aspect of Petitioner's third claim for ineffective assistance of counsel because counsel failed to object to the admission of his telephone conversation from the jail. For the reasons that follow, the Undersigned concludes that this aspect of claim three is procedurally defaulted.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of

habeas corpus. 28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's

failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano,* 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin,* 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

In claim three, Petitioner asserts, *inter alia*, that he was denied the effective assistance of counsel because his attorney failed to object to admission of his telephone conversation as improperly authenticated. Petitioner did not raise this issue on direct appeal, where he was represented by new counsel. Moreover, he may now no longer present this claim to the state courts by virtue of the application of Ohio's doctrine of *res judicata. See State v. Perry*, 10 Ohio St.2d 175 (1967) (holding that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*); *see also State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of procedurally barred claims. *See Cole*, 443 N.E.2d at 170–71; *Ishmail,* 423 N.E.2d at 1070. The Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000*); Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Finally, with respect to the last *Maupin* factor, the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that *res judicata* rule articulated in *Perry* is an adequate and independent ground for denying relief, and the *Maupin* factors are satisfied. Therefore, Petitioner has waived this portion of claim three for review in these proceedings.

Petitioner may still secure review of his claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded. . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a

substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has offered no excuses and has thus failed to establish cause for his procedural default.

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id*. at 317. However, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera*, 506 U.S. at 404).

The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—*i.e*., evidence not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). Review of the record fails to establish that Petitioner can meet this standard here.

**Merits: Claims One, Two and Four**

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court

determinations. The United State Supreme Court described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that statecourt decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer,* 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013)

(considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182.

**Claims One and Four**

In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence. In claim four, Petitioner similarly asserts that the trial court erred in denying his motion for judgment of acquittal, because the State failed to introduce sufficient evidence to establish guilt.

The state appellate court rejected these claims in relevant part as follows:

> Crockett argues in this first, third, and fourth assignments of error that his convictions are against the manifest weight of the evidence and are not supported by sufficient evidence so that the trial court should have granted his Crim.R. 29 motion.
>
> Crim.R. 29(A) permits a trial court, upon motion, to enter a judgment of acquittal. *State v. Dougherty*, 12th Dist. Preble No. CA2013–12–014, 2014–Ohio–4760, ¶ 17. An appellate court reviews a trial court's decision on a motion for acquittal using the same standard as that used to review a claim challenging the sufficiency of evidence. *State v. Clements,* 12th Dist. Butler No. CA2009–11–277, 2010–Ohio–4801, ¶ 17.
>
> When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006–01–007, 2007–Ohio–2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

\*\*\*

When offering proof, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. *State v. Crutchfield,* 12th Dist. Warren No. CA2005–11–121, 2006–Ohio–6549, ¶ 20. Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, ¶ 75. A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. *State v. Shannon,* 191 Ohio App.3d 8, 2010–Ohio–6079, ¶ 10 (12th Dist.).

Crockett was convicted of trafficking in cocaine and heroin in violation of R.C. 2925.03(A)(2), which provides that no person shall knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

Crockett was also convicted of possession of cocaine and heroin in violation of R.C. 2925.11(A), which provides that no person shall knowingly "obtain, possess, or use a controlled substance or a controlled substance analog."

Crockett was also convicted of having weapons while under disability in violation of R.C. 2923.13(A)(3), which provides, "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse \* \* \*."

After reviewing the record, we find that Crockett's convictions were supported by sufficient evidence, were not rendered against the manifest weight of the evidence, and that the trial court did not err in denying Crockett's Crim.R. 29 motion. The state presented evidence that Crockett possessed, and was preparing for sale, heroin and cocaine, and that he possessed a gun after having been convicted of a prior drug offense.

Ivers testified that he was Ruth's probation officer, and that as a term of her probation, he was permitted to search Ruth's home. Ivers testified that when he arrived to conduct the search, Ruth and her daughter were in the home, along with Crockett and another man. Ivers estimated that the apartment was approximately 500 square feet, and that during the search, he found multiple drugs and drug paraphernalia, including digital scales, lighters, and a burnt spoon. Ivers also located a pill counter and several pill containers.

Ivers also testified that during the search, he discovered a safe under the bed as well as the key to the safe in a cup near the bed. When opened, Ivers discovered more drugs, cash, and a gun. Ivers then contacted Lieutenant McFarland, who proceeded to investigate by processing the drugs, paraphernalia, and gun.

Lieutenant McFarland testified that he is a detective with the Fayette County Sheriff's Office, and that based upon his training and experience, he is familiar with the preparation of drugs for distribution and sale. Lieutenant McFarland testified that when he encountered the drugs in the bedroom and safe, he observed a "large amount" of cocaine and heroin, as well as digital scales used to measure the drugs, and baggies used to separate the drugs for sale. Lieutenant McFarland also seized $1,494.70 in cash from the safe, as well as the gun.

The state then played a redacted version of a phone call between Crockett and an unnamed female. The call was placed from the jail, and was intercepted and recorded by the sheriff's office. The jury received a transcript of the redacted phone call, and Crockett stipulated that it was his voice heard on the phone call and that the transcript was accurate. In full, the transcript states,

[Female] Right. That's what he said-we might as well wait on that, you know and um, I don't know-he-he-said they'll dust the gun to see whose it is and . . .

[Crockett] I wiped that down. I got nothing to do with that.

[Female] Don't talk on this phone.

When viewed in a light most favorable to the prosecution, the evidence supports Crockett's convictions for trafficking in and possession of heroin and cocaine. The fact that the gun was located in the safe with large amounts of cocaine, heroin, and cash indicates that Crockett, who admitted to wiping down the gun, had

knowledge of the items used in the trafficking of drugs. The evidence indicates that Crockett knew that the drugs were being processed for sale, as indicated by the presence of paraphernalia required to sell the drugs, including digital scales, baggies, and pill counters, along with the cash and gun.

The evidence also supports Crockett's conviction for having a weapon under disability. Crockett stipulated to his prior conviction for aggravated possession of drugs, so that he was not permitted to possess a gun. Given his statement that he wiped down the gun found in the safe, the jury was free to infer that Crockett possessed the gun.

Crockett argues that the state failed to prove his participation in trafficking or his possession of the gun because there were never fingerprints recovered from the gun, safe, or drugs. However, and based upon Crockett's statement during the phone call that he wiped down the gun, it was reasonable to infer that no fingerprints would be found. Crockett also argues that his statement regarding wiping down the gun was taken out of context. However, the portion of the phone call used during trial clearly indicates that Crockett and the female were discussing the gun seized from Ruth's apartment. Crockett gave no indication that he was discussing some other gun when he spoke with the unnamed female. It readily appears the gun the female was discussing was being processed for evidence, and it is the same gun about which Crockett made his response.

The jury's verdict indicates that it considered and weighed the evidence carefully. The jury found Crockett guilty only of the trafficking and possession charges related to the heroin and cocaine found in the safe with the gun. The jury, however, acquitted Crockett of the other charges specific to the drugs found in Ruth's bedroom that were not found alongside the gun in the safe. The jury's verdict, therefore, indicates that it considered the fact that heroin and cocaine were directly linked to the gun, and that Crockett's knowledge of the gun also indicated his knowledge of the large amounts of cocaine and heroin found with the gun.

After viewing the evidence in a light most favorable to the prosecution, the jury could have found the essential elements of trafficking, possession, and having weapons under disability proven beyond a reasonable doubt. As such, Crockett's convictions are supported by sufficient evidence. . . .

> Having found that Crockett's convictions are supported by
> sufficient evidence and were not rendered against the manifest
> weight of the evidence, Crockett's first, third, and fourth
> assignments of error are overruled.

*State v. Crockett*, 2015 WL 2169268, at *2-5.

Petitioner's claim that his convictions are against the manifest weight of the evidence

fails to present an issue appropriate for federal habeas corpus relief. *See Nash v. Eberlin*, 258 F.

App'x 761, 765, n. 4 (6th Cir. 2007). Although 28 U.S.C. § 2254 authorizes habeas corpus relief

to a state prisoner if the prisoner establishes that he is in custody in violation of the Constitution

or laws of the United States, federal law does not authorize federal habeas relief merely on the

basis that a jury's verdict is against the manifest weight of the evidence.

> [U]nder Ohio law, a claim that a verdict was against the manifest
> weight of the evidence—as opposed to one based upon insufficient
> evidence—requires the appellate court to act as a "thirteenth juror"
> and review the entire record, weight the evidence, and consider the
> credibility of witnesses to determine whether "the jury clearly lost
> its way and created such a manifest miscarriage of justice that the
> conviction must be reversed and a new trial ordered." *State v.
> Martin,* 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457
> U.S. 31 (1982). Since a federal habeas court does not function as
> an additional state appellate court, vested with the authority to
> conduct such an exhaustive review, any claim that petitioner's
> conviction was against the manifest weight of the evidence cannot
> be considered by this Court.

*Norris v. Warden*, NCI, No. 2:08–CV–732, 2010 WL 582623, *9–10 (S.D. Ohio Feb. 11, 2010),

*adopted and affirmed* 2010 WL 883847 (S.D. Ohio Mar. 9, 2010). Thus, Petitioner's claim that

his convictions are against the manifest weight of the evidence does not raise an issue of federal

law and must be dismissed.

However, before a criminal defendant can be convicted consistent with the United States

Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining

whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and for the reasons discussed by the state appellate court, Petitioner has not done so here.

Evidence indicated that Petitioner had handled the firearm that was found in the safe along with large amounts of cocaine and heroin, and various items used in the selling of drugs, including digital scales, baggies, a pill counter, and pill containers. When viewing this evidence in the light most favorable to the prosecution, the jury could reasonably conclude that Petitioner had been in possession of the firearm (while under a disability), and was guilty of the possession

and trafficking in heroin and cocaine. Notably, "circumstantial evidence alone can sustain a guilty verdict and . . . circumstantial evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). Additionally, "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (*per curiam*) (citing *Jackson,* 443 U.S. at 319). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "[T]he only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

Claims one and four are without merit.

**Claims Two and Three**

In claim two, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to request that the charge of having a weapon while under disability be tried to the trial court and, as a result, the jury learned that he had previously been convicted of possession of drugs. In the remaining portions of claim three, Petitioner asserts that he was denied the effective assistance of counsel, because his attorney stipulated to a redacted recording of a telephone conversation rather than requiring admission of the entire conversation. The state appellate court rejected these claims as follows:

> Crockett argues in his second assignment of error that his trial court was ineffective for allowing the state to try the having weapons under disability charge to a jury, as well as stipulating to the admittance of the redacted phone call between himself and the unnamed female.
>
> The United States Supreme Court established a two-part test in regard to ineffective assistance of counsel. *Strickland v.*

16

*Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). That test requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers*, 12th Dist. Fayette No. CA2005–12–035, 2007–Ohio–915, ¶ 33. Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Crockett first argues that his trial counsel was ineffective for not having a bench trial on the having weapons under disability charge because his prior conviction was the sole basis for the jury's guilty verdict. Despite his assertion, however, the jury's verdict was not solely premised upon the fact that Crockett had a prior conviction for a drug-related offense. Instead, the jury heard evidence that Crockett wiped down the gun, and that the gun was located in the same safe as large amounts of cocaine, heroin, and cash. In addition to the prior conviction, the state had to prove that Crockett possessed the gun, which it did by presenting evidence that Crockett wiped the gun of his fingerprints.

Moreover, the trial court instructed the jury that Crockett's prior conviction was to be used for a limited purpose. Within the jury instructions, the trial court informed the jury that Crockett's prior conviction for drug possession was received only for a limited purpose. You may not consider it to prove character of the defendant in order to show he acted in conformity with that character. You may consider that evidence only for the purpose of determining whether or not this Defendant was under disability at the time in question. It cannot be considered for any other purpose.FN1

Given the other evidence of guilt, as well as the trial court's instruction that the conviction could not be used as proof of Crockett's character or acts in conformity with that character, Crockett has failed to prove that the results of his trial would have been different had the having weapons under disability charge been tried separately.

Crockett also argues that his counsel was ineffective for stipulating to the redacted phone call because the jury was given the statements out of context. Crockett asserts that because of the redactions, it was "impossible to determine the context of the

conversation." However, Crockett does not indicate what the proper context was, or in what way the redacted portions would have demonstrated that Crockett and the female were discussing a gun other than the one seized from the safe on the night of the probation search.

Crockett does not explain in what way the results of his trial would have been different, other than to argue that the jury would have been able to determine the context of the statements had it been given the entire phone call. However, and even if the jury had been given the entire phone call, it would not have changed the fact that Crockett is heard admitting that he wiped down the gun.FN2

Crockett's defense counsel was provided the full recording during discovery, and did not believe that any other portion of the phone call would have proven helpful to Crockett or provided any necessary context. We will not question the obvious trial strategy connected with determining what limited amount of the damaging phone call should be played for the jury.

Furthermore, a complete transcript of the phone call was included in the record. We have reviewed the complete transcript and find that nothing within the remainder of the phone call would have provided necessary context, and nothing in the phone call indicates in any way that Crockett was not talking about the gun found in the safe when he admitted that he wiped it down.

In fact, from the beginning of the phone call until the end, Crockett is heard discussing the case, the charges against him, the possibility of posting bond, and facing felony charges. At no time did Crockett change the course of the conversation away from his current charges, and at no time did the conversation indicate that any other gun was being discussed. There is no indication whatsoever that the other aspects of the phone call would have allowed the jury to believe anything other than Crockett and the female were discussing the gun seized from Ruth's home. As such, Crockett has failed to demonstrate that the results of his trial would have been different had the jury heard the entire phone call.

After reviewing the record, we find that Crockett received effective assistance of counsel. Therefore, Crockett's second assignment of error is overruled.

FN1:  A jury is presumed to follow and comply with instructions given to them by the trial court.  *State v. Shouse*, 12th Dist. Brown No. CA2013-11-014, 2014-Ohio-4620, ¶ 13.

FN2:  Crocket does not direct us to any portion of the phone call that if played would have provided facts that change the context in which the jury heard his comments regarding the gun.

*State v. Crockett*, 2015 WL 2169268, at *5-7.

In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "Only a right to 'effective assistance of counsel' serves the guarantee."  *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). A petitioner who claims the ineffective assistance of counsel must demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result.  *Id.* at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013).  A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'"  *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) and citing *Strickland,* 466 U.S. at 687).  To make such a showing, a petitioner must overcome the strong presumption that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 689.  To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* (quoting *Strickland*, 466 U.S. at 687).  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).  To establish prejudice, it must be shown that there is a reasonable

probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

Additionally, the United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court observed that while "'[s]urmounting *Strickland's* high bar is never . . . easy.' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) and citing *Strickland,* 466 U.S. at 689). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

As discussed by the state appellate court, Petitioner does not indicate, and the record does not reflect, in what manner any portion of the telephone conversation that was not admitted at trial would have assisted him. Further, "Ohio courts. . . treat the question of whether to try a weapons under disability charge separately to the bench so that the jury will not hear about the prior convictions as a matter of trial strategy." *Jones v. Moore*, No. 3:13-cv-085, 2013 WL 1192407, at *3 (S.D. Ohio March 22, 2013). In this respect, "[c]ounsel's tactical decisions are

particularly difficult to attack" and "are 'virtually unchallengeable.'"  *Id.* (citing *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Buell v. Mitchell*, 274 F.3d at 337, 359 (6th Cir. 2001) (quoting *Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984)).  In any event, and in view of the substantial evidence of guilt and for the reasons addressed by the state appellate court, this Court agrees that Petitioner cannot establish prejudice, as that term is defined in *Strickland,* based on his attorney's failure to request that the charge of having a weapon while under disability be tried to the court.

Claims two and three are without merit.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    *s/ Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge